**IN THE DISTRICT COURT OF THE UNITED STATES**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**ORANGEBURG DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CR. NO.: 5:16-975 (JMC)** |
| | ) | |
| **-vs-** | ) | |
| | ) | **MOTION FOR A VARIANCE** |
| **RYAN NORTH** | ) | **FROM THE GUIDELINES** |

I. Introduction

Now comes the defendant, RYAN NORTH, through his undersigned counsel, and moves the Court for a variance from the sentencing guidelines. The Presentence Report (PSR) has calculated Mr. North's guideline range as 46-57 months based on an offense level of 22, Criminal History II (PSR paragraph 76). Neither party has objected to the guideline range. The government has indicated that they intend to make a motion for a downward departure under U.S.S.G. § 5 K1.1. The defendant's cooperation with the government will be discussed in this motion because it is truly extraordinary.

A bedrock principle of federal sentencing is that the sentencing court should seek to accomplish the sentencing goals outlined in 18 U.S.C. § 3553(a) 1-7, with a sentence that is "sufficient, but not greater than necessary" for that purpose (emphasis added). In making that assessment, the Court should consider whether there are any factual matters concerning the "history and characteristics of the defendant," or the "circumstances of the offense," to justify a sentence below the guidelines.

## II. History and Characteristics of the Defendant

### A. Childhood

Ryan North was born in Troy, New York in 1975. He recently turned 43 years of age. Mr. North is the second oldest of six children. He had an extremely unusual and difficult childhood. North's parents separated when he was three years old. His mother had some type of mental breakdown and had to be institutionalized. His father, who was in South Carolina, was unable to care for North, his older brother, and his two younger sisters (only four of the North children had been born at that time.) All of the children were placed in foster care. For three years, North was moved from one foster home to another. They tried to keep the children together in pairs, but this was not always possible. North and his siblings were subjected to much physical and verbal abuse. When North turned seven years old, he and his sister were placed with a wonderful family in upstate New York. This couple loved them like they were their own children and wanted to adopt them. North thought that everything in his life was going to fall into place, but this was not to be.

After requests were made for adoption, North's father refused to give his consent for the adoption. North and his siblings were sent to live with his father in Smoaks, South Carolina. This was not a workable solution. There were seven people living in a two-bedroom trailer. There was never enough money to meet the family's basic needs.

Despite these financial hardships, North was a very fine student. He was asked to skip the fourth grade when he arrived in South Carolina. He graduated from Ruffin High School with honors. North started college at South Carolina State University, but had to drop out in his sophomore year to help care for his younger siblings.

B. Employment

Ryan North has always been a hard worker. He has worked primarily in the construction field. From 2002 until 2005, North worked for Count One Construction, a fencing company based in Virginia. At one point, he was in charge of a 30-man crew. They had contracts putting cyclone fences around various military bases. North earned $20 per hour for this company and was offered a job at $30 per hour in Virginia when the work in South Carolina ran out. He was unable to accept this position because of the pending federal charge in paragraph 36 of the PSR.

North started his own company, North Brothers Concrete (NBC) in 2005. At one point, NBC had 17 employees. The biggest contract NBC ever received was for 2.4 million dollars. Like many companies, NBC failed during the economic collapse of 2010. This could not have happened at a worse time for North because family responsibilities were building toward their peak.

C. Family Life

North married Alicia Simmons in 1997. Their marriage remains strong and intact to the present. Alicia fully supports North and intends to stand by him, no matter what. Together they have five children, all of which have been taught the value of hard work. None of the North children, whose lives are described below, have ever been in legal trouble.

Corey North is 24 years old. He went to Benedict College for two and a half years. He left college to work at Walmart and has a seven-month old son.

Colin North went to South Carolina State University for two years and is employed by Cleveland Construction. He can run any equipment the company has, from mini-excavator bobcats to backhoes.

Ashley North is 23 years old. She graduated from the University of South Carolina (USC) Salkehatchie with an education degree. She worked full time for Walmart during her five years of college.

Ryan Chelsea North is 20 years old. She graduated from McGrady Training Center with a military certification. She has been admitted to USC Salkehatchie in the fall. She has worked full time for Verizon in Summerville for several years.

Raven North is 18 years old and just graduated from Colleton County High School. She worked six days per week at two different jobs (Arby's and Southern Beauty Hair Store) all the way through high school.

North is understandably proud of his children. He has strived to teach them not to make the same mistakes he has made, and by all accounts, those lessons have been learned. North has made substantial contributions to the college expenses of each of his children.

## III. Circumstances of the Offense

As discussed above, Ryan North's participation in this offense was motivated by significant financial hardship and a desire to provide a good home and education for his five children. He understands very well that this does not excuse his criminal behavior. North is merely trying to explain to the Court why he made such terrible decisions.

North admits that he is the one who started this scheme. This fact is fully accounted for in the guidelines by a four level increase (without objection) based on his role as a leader/organizer of the offense.

North would like to note that after the offense began, many of the other people involved carried it far beyond what he ever intended. They conducted many transactions from which he had no profit or any knowledge. Certainly, while “reasonable foreseeability” is the standard for “relevant conduct” under the guidelines, a defendant’s lack of personal culpability for a substantial part of the criminal conduct is a valid reason for concluding that a guideline sentence is excessive.

North was approached with a target letter on January 29, 2015. Within a very short time he signed a proffer letter and agreed to assist the government. He was debriefed on multiple occasions and provided truthful information. North identified every participant in the scheme, including some family members. To the best of his ability, he outlined the other participants’ roles, places where checks were cashed and individuals who were acting as buyers for the stolen goods. North wore a wire to help SLED recover stolen heavy equipment. The court is no doubt well aware that this type of cooperation is fraught with danger. The government has agreed to file a motion to reward North for his substantial assistance, so the defense will not belabor it in this motion. It is sufficient to note that North’s cooperation was extraordinary and he should be rewarded with a substantially reduced sentence.

The punishment for this offense has been looming over North’s head for three and a half years now. During that time, he has completely withdrawn from criminal activity. North has been on federal bond since January 4, 2017. He has complied with all

conditions of that bond, including passing all drug tests. North has been placed on probation three times in his life – 1995, 2005, and 2006. All three times he successfully completed probation, and twice he was granted early termination.

## IV. 3553(a) Factors

Ryan North has risen above an incredibly difficult childhood. Many of the poor decisions he made by involving himself in this conduct sprung from an intense desire on his part to spare his five children the hardships that he had to endure. Certainly, this does not excuse his behavior, but it explains his participation in it. North's children are all grown now. This fact should give the Court confidence that North will not be involved in future criminal conduct and that an overly harsh sentence is not needed "to protect the public from further crimes of the defendant." § 3553(a)(2)(C). North is both hardworking and intelligent. He owns his own business. Incarceration is not needed "to provide the defendant with needed educational and vocational training, medical care or other correctional treatment…" § 3553(a)(2)(b).

By his good behavior since January 2015, North has demonstrated that he understands the "seriousness of the offense" and that he has "respect for the law." § 3553(a)(2)(A). Through his cooperation, North has done his part to "deter the criminal conduct," of others – § 3553(a)(2)(B) – and a harsh sentence is not needed to deter it further.

For all these reasons stated herein, counsel submits that a substantial sentence of incarceration is not needed in this case and respectfully moves the Court to provide a sentence substantially below the advisory guidelines.

Respectfully submitted,

s/ALLEN B. BURNSIDE________
Assistant Federal Public Defender
1901 Assembly Street, Suite 200
Columbia, South Carolina 29201
Telephone: (803) 765-5073
ATTORNEY ID #1620
Email address: Allen_Burnside@fd.org

Columbia, South Carolina

July 6, 2018